Nathan E. Shafroth (SBN 232505)
Zoe B. Kaiser (SBN 352368)
COVINGTON & BURLING, LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7053
Email:  nshafroth@cov.com
            zkaiser@cov.com

Robert N. Hunziker (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 10th Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email:  rhunziker@cov.com

*Attorneys for Plaintiffs*
*NOVO NORDISK A/S and*
*NOVO NORDISK INC.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK INC., <br><br> Plaintiff, <br><br> v. <br><br> GOGLIA NUTRITION, LLC D/B/A  G-PLANS AND FUTURHEALTH, INC., <br><br> Defendant. | CASE NO. **'24CV1385 LL    VET** |

**COMPLAINT**

1.     Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk"), by and through their attorneys, Covington & Burling LLP, file their complaint against Goglia Nutrition d/b/a G-Plans and Futurhealth, Inc. (collectively "Defendants") for trademark infringement, false advertising and unfair competition, and seek injunctive and other relief. Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

**INTRODUCTION**

2.     Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

3.     The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

4.     Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide. Novo Nordisk is also the only company authorized to identify its medicines containing semaglutide using the trademarks Ozempic®, Wegovy®, and Rybelsus®. The FDA has not approved any generic versions of these medicines. To the contrary, the FDA has sent warning letters to companies which claimed that their unapproved drug products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

5.     This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq., related state laws, and the common law arising out of Defendants' infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks, false advertising, and unfair competition.

6.     Defendants use Novo Nordisk's Ozempic® and Wegovy® marks to market and sell to patients compounded drug products that purport to contain semaglutide. Despite such compounded drug products having not been evaluated by the FDA for their safety, effectiveness, or quality, Defendants falsely and misleadingly represent to patients that their products are the same as, or equivalent to, Novo Nordisk's FDA-approved medicines.

7.     Defendants' conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA and deemed safe and effective.

## THE PARTIES

8.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

9.     Plaintiff NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

10.     NNI markets, promotes, offers, and/or sells Novo Nordisk's Ozempic® and Wegovy® medicines throughout the United States, including in this District.  NNAS has granted to NNI exclusive rights to distribute with the right to market, advertise, promote, offer for sale and sell Ozempic® and Wegovy® medicines in the United States.

11.     Defendant Goglia Nutrition, LLC d/b/a G-Plans is a California limited liability company with a registered business address at 1220 Rosecrans Street, San Diego, California 92106, in this judicial district. The CEO and Co-Founder of Defendant Goglia Nutrition, LLC d/b/a G-Plans is Luke Mahoney.

12.     Defendant Futurhealth, Inc. is a Delaware corporation registered to do business in California with a principal business address of 3902 La Cresta Drive, San

Diego, California 92107, in this judicial district. The CEO and registered agent for Defendant Futurhealth, Inc. is Luke Mahoney.

13.    Defendants operate together, including through use of shared officers, employees, and marketing and provider resources, to sell and promote compounded drug products that purport to contain semaglutide and that are not approved by the FDA ("Unapproved Compounded Drugs"). Defendants sell and promote Unapproved Compounded Drugs masquerading as Ozempic® and Wegovy® and use the Ozempic® and Wegovy® marks in their false advertising and promotion of Unapproved Compounded Drugs that are neither Ozempic® nor Wegovy®.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C. § 1338(a).  The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants operate in this District, manufacture and/or sell their compounded drug products that purport to contain semaglutide in this District, and otherwise conduct business in this District.  Defendants are subject to personal jurisdiction in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® AND WEGOVY® TRADEMARKS

16.    Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines. The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

17.    The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. Ozempic® also lowers the

risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

18.     The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long-term in adults and children aged ≥ 12 years with obesity and some adults that are overweight with weight-related medical problems, along with a reduced calorie diet and increased physical activity. Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as cardiovascular death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

19.     The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

20.     The Ozempic®, Wegovy®, and Rybelsus® medicines have been extensively studied in clinical trials and are FDA-approved.

21.     Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is detailed in its respective product label.

22.     The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only and should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

23.     Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

24.     The Ozempic® trademark is inherently distinctive.

25.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites ozempic.com and novonordisk-us.com. As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

26.     Plaintiff NNAS is the owner of U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical

preparations, in International Class 5. A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

27.    Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021, and has used it continuously since that time.

28.    The Wegovy® trademark is inherently distinctive.

29.    Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com. As a result of its use of the Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

30.    Plaintiff NNAS is the owner of (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5. True and correct copies of Plaintiff's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

31.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® marks are exclusively associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets of Novo Nordisk.

32.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known, strong, and famous marks, and became such prior to any of the acts of Defendants complained of herein.

## DEFENDANTS' SALE OF UNAPPROVED COMPOUNDED DRUGS

33.    Novo Nordisk has not authorized Defendants to use its marks, has not provided Defendants with Novo Nordisk's FDA-approved semaglutide medicines, and

does not sell the bulk semaglutide in Novo Nordisk's FDA-approved semaglutide medicines to any compounding pharmacies from which Defendants may be sourcing its Unapproved Compounded Drugs.

34.    Defendants market and sell to patients Unapproved Compounded Drugs that purport to contain semaglutide and that are not approved by the FDA.

35.    On information and belief, the Unapproved Compounded Drugs sold by Defendants are made by compounding pharmacies, which deliver them either directly to patients or to Defendants for administration or dispensing to patients.

36.    The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

37.    According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

38.    The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4] As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

39.    FDA has issued guidance on "Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved or evaluated for safety and effectiveness"; and (2) "FDA has received adverse event reports after patients used compounded semaglutide. Patients should not use a compounded drug if an approved drug is available to treat a patient. Patients and health care professionals should understand that the agency does not review compounded versions of these drugs for safety, effectiveness, or quality."[6]

40.    Based on data as of June 30, 2024, the FDA's Adverse Event Reporting System (FAERS) database includes 542 cases of adverse events associated with compounded "semaglutide."[7]  Of those cases, 388 were classified as "serious" adverse events, 124 reported hospitalization, and ten involved deaths.  This is more than twice the number of adverse events for all compounded drugs in 2022.  The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[8]  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."  The FDA believes the containers and packaging used by compounders, including multidose vials and prefilled syringes, the varying product

---

[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

[6] Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss.

[7] FDA Adverse Event Reporting System (FAERS) Public Dashboard, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited July 31, 2024).

[8] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors. A previous publication from the Journal of the American Pharmacists Association also highlighted administration errors where patients accidentally self-administered doses of compounded "semaglutide" up to 10 times greater than the intended amount.[9]

## DEFENDANTS' TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

41.    Despite the foregoing, Defendants use Novo Nordisk's marks to attract patients interested in Novo Nordisk's FDA-approved semaglutide medicines before pushing those patients instead to purchase Unapproved Compounded Drugs, including through false and misleading representations.

42.    Specifically, Defendants falsely describe and advertise their Unapproved Compounded Drugs by, for example, making statements that describe Ozempic® and Wegovy® but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs, and by claiming and implying that their Unapproved Compounded Drugs have been approved by FDA and/or have been subjected to clinical studies and trials.

43.    Defendants' use of the Ozempic® and Wegovy® marks is extensive from start to finish of the patient's purchasing process.

44.    Defendants run sponsored ads online that heavily emphasize the Ozempic® and Wegovy® marks, such as offers for "Easy fast Ozempic prescription – Easy fast Wegovy prescription" and "Get Ozempic with no insurance," and run sponsored ads on Forbes advertising "Access to Ozempic, Wegovy, and other weight loss meds," as pictured below and in **Exhibit D**.

---

[9] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

Sponsored

 G-Plans
https://www.g-plans.com/  ⋮

## Get Ozempic with no insurance - Prescription To Semaglutide

On average, people on Ozempic or Wegovy lose 15% of their weight in a year or less.

Sponsored

 G-Plans
https://www.g-plans.com/  ⋮

## Easy fast Ozempic prescription - Easy fast Wegovy prescription

On average, people on Ozempic or Wegovy lose 15% of their weight in a year or less. Lose up to 15% of your body fat in 3 simple steps. Take the quiz to find out how. 30% off Wegovy.

Sponsored

g-plans.com
https://www.g-plans.com/  ⋮

## Ozempic Prescription in 5 mins - Delivered To Your Doorstep

The Same Active Ingredient in Wegovy®* and **Ozempic**®. No Hidden Fees — No Insurance Needed. Medically Supervised GLP-1 Subscriptions. Get Approved With This 5-min Quiz.

**Explore Weight Loss Programs From Our Featured Partners**



g·plans ℞

- First all-encompassing online weight loss medication program
- Access to Ozempic, Wegovy and other weight loss meds
- Weekly prescribed medication shipped to your door
- Personalized metabolic meal plan and 1:1 dietician support
- Free 5min quiz to get pre-approved, no insurance needed

G-Plans

Get Started

On G-Plans Website

Sponsored

 FuturHealth
https://www.futurhealth.com/weight-loss/ozempic-wegovy  ⋮

## Get Ozempic Discounted Today - Limited Time: 30% off Ozempic®

Lose Up To 15% Of Your Body Weight In 3 Easy Steps: Quick quiz, Prescription and Delivery. No Insurance Needed for **Ozempic**, Wegovy! It's taking District of Columbia by storm.

45.    In some of its sponsored advertising, Defendants deceptively pose as an affiliate of Novo Nordisk, advertising under the name "Ozempic Medi." *See* **Exhibit D**.



46.    When patients follow these ads to the G-Plans or Futurhealth websites[10], they are met with full-size pictures of branded Ozempic® pens and the promise that they can "Get access to **Ozempic**®, **Wegovy**®" or "Get approved" by taking a "5-min quiz" with "***no insurance needed.***" *See* **Exhibit E**.



---

[10] G-Plans, https://g-plans.com/pages/medication/ (last visited July 25, 2024); Futurhealth, https://futurhealth.com/medication/ (last visited July 25, 2024).

47.     Patients are promised that they can get "Access to Wegovy® or Ozempic® for 99/month with "no insurance needed." **Exhibit E**.



48.     Patients who accept Defendants' invitation to "Take The Quiz" or to "START NOW - $99" are brought to the same sign-up funnel, which is largely identical on each of the G-Plans and Futurhealth websites. In an apparent effort to maximize sales without regard for patient safety, Defendants steer patients away from disclosing medical conditions and health history that G-Plans and Futurhealth claim would otherwise "disqualify" them from "weight loss medication approval," by describing the option of "none" as the "best answer," as pictured below and in **Exhibit E**:



49.     Additionally, rather than inform patients that they also sell Unapproved Compounded Drugs, Defendants repeatedly assure patients that they will be prescribed "true GLP-1 medications (like Ozempic or Wegovy)." **Exhibit E**.

**g·plans**

We specialized in weight loss with GLP-1s to guarantee results

G-Plans doctors only prescribe true GLP-1 medications (like Ozempic or Wegovy) - no false supplements or stimulants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18   50.   At the end of this funnel, patients are ***charged*** for a subscription plan that

19   purports to include a "Prescription to Wegovy® or Ozempic®." **Exhibit E**.

20   51.   However, it is only ***after*** paying $129 for the first month of an automatically

21   renewing subscription fee (or $594 for a "30% OFF" six month supply) that Defendants

22   present patients with the option to instead purchase their Unapproved Compounded

23   Drugs, falsely and misleadingly dubbed "Generic Semaglutide." **Exhibit E**.

24

25

26

27

28

14



52.     The graphic accompanying this selection shows a side-by-side comparison between the so-called "Generic Semaglutide" and Ozempic®. **Exhibit E**. It falsely indicates that despite the putatively steeply discounted price ($229 down from $1,200), the so-called "Generic Semaglutide" is equivalent to Ozempic® in key attributes, including having the same "Active ingredient," "Weight-loss results," and "FDA-approved" status:



53.   The claims made in this graphic are false and misleading.

54.   First, the FDA does not approve molecules in medications, such as semaglutide, but rather approves complete medications (like Wegovy®, Ozempic®, and Rybelsus®) after determining that the complete medications are safe and effective for their intended uses. But the FDA did not approve Defendants' Unapproved Compounded Drugs and did not conduct premarket review to evaluate Defendants' Unapproved Compounded Drugs for safety, effectiveness, or quality. Defendants therefore have no basis for claiming, directly or indirectly, that their Unapproved Compounded Drugs are "FDA-approved."

55.   Second, a "generic" in the context of prescription drugs refers to a medication that completed a specific FDA review process addressing important attributes

of the drug, like safety and efficacy.[11] But the FDA has not approved any generic versions of drugs containing semaglutide, let alone approved Defendants' Unapproved Compounded Drugs. It is therefore false for Defendants to advertise their product as a "generic" version of Ozempic®.

56.     Third, by listing the Unapproved Compound Drug and the authentic Novo Nordisk medication side by side, with identical check marks, Defendants' graphic indicates that the "semaglutide" allegedly contained in the Unapproved Compounded Drug is the same as that in the authentic Novo Nordisk medicines. To the contrary, Novo Nordisk is not directly or indirectly supplying semaglutide to Defendants or any compounding pharmacies from which they may be sourcing their Unapproved Compounded Drugs.

57.     Moreover, the FDA has not reviewed the "semaglutide" allegedly in Defendants' Unapproved Compounded Drugs for safety, effectiveness, or quality. Defendants have no basis to claim that this semaglutide is equivalent to the semaglutide in Novo Nordisk's FDA-approved medications.

58.     Fourth, on information and belief, Defendants have never actually charged the putative non-discounted price of $1,200 for its Unapproved Compounded Drugs that is displayed in its comparison graphic.

59.     Defendants further mislead patients, throughout their sign-up funnel and elsewhere on their websites and in advertising, by making a number of false and misleading claims about the nature their Unapproved Compounded Drugs.

60.     For example, Defendants claim that "In clinical trials, Semaglutide **users lost an average of 15% of their body weight**." **Exhibit E**.

---

[11] U.S. Food & Drug Administration – Generic Drugs: Questions & Answers (March 16, 2021) https://www.fda.gov/drugs/frequently-asked-questions-popular-topics/generic-drugs-questions-answers#:~:text=A%20generic%20drug%20is%20a,performance%20characteristics%2C%20and%20intended%20use (explaining that generic drugs meet the "same high standards of quality and manufacturing as the brand-name product")



61.   But in reality, Novo Nordisk's FDA-approved medicines are the only drugs containing semaglutide to have been publicly studied for weight loss in clinical trials. On information and belief, no such data exists for Defendants' Unapproved Compounded Drugs.

62.   Elsewhere, Defendants characterize their Unapproved Compounded Drugs as a "generic" of the Ozempic® and Wegovy® medicines—again, a product category that does not exist.

63.   Defendants' advertising and promotional materials are false and misleading, suggesting an association with Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines when no such association exists.

64.   Defendants' use of Novo Nordisk's marks in conjunction with its false and misleading characterizations of its Unapproved Compounded Drugs will inevitably cause harm to both patients and Novo Nordisk.

65.   Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo

Nordisk's FDA-approved medicines, or equivalents thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[12]

66.    There are already extensive examples of consumer dissatisfaction caused by Defendants' unlawful conduct, which, if left unchecked, is likely to negatively impact the goodwill of Novo Nordisk, its marks, and its medicines.

67.    On the Better Business Bureau website as of July 2024, G-Plans is rated F, with 1.42 out of 5 stars based on 533 customer reviews and over 1,400 complaints, while Futurhealth is rated F, with 1.17 out of 5 stars based on 58 customer reviews and over 150 complaints.[13]

68.    On sitejabber, G-Plans has 1.0 stars from 251 reviews, with 0% positive reviews over the last twelve months.[14]

69.    In the Google Play store, G-Plans's app is rated 2.4 stars with over 2.8 thousand reviews.[15]

70.    In such reviews, patients explain how Defendant G-Plans has misled, deceived, and defrauded them. *See* **Exhibit F**.

---

[12] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."). ."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

[13] G-Plans, Better Business Bureau, https://www.bbb.org/us/ca/san-diego/profile/health-and-wellness/g-plans-1126-1000063343 (last visited July 23, 2024); Futurhealth, Better Business Bureau, https://www.bbb.org/us/ca/san-diego/profile/weight-loss/futurhealth-1126-1000125301 (last visited July 23, 2024)

[14] G-Plans, sitejabber, https://www.sitejabber.com/reviews/g-plans.com (last visited July 23, 2024).

[15] G-Plans, Google Play, https://play.google.com/store/apps/details?id=com.gplans&hl=en_US&gl=US (last visited July 23, 2024).

71.     In one complaint against G-Plans on the Better Business Bureau, a patient "entered [] credit card information into a web-based page for Ozempic medication which was slightly over $1,000" and "scheduled with the doctor via their web calendar." *Id.* The patient's credit card was charged, but the appointment with the doctor was cancelled. When the patient called G-Plans, the patient was told that G-Plans was "having problems with their web site." *Id.* The G-Plans representative told the patient that "the generic medication was much cheaper at $396.00." *Id.* The patient agreed to purchase this cheaper "generic" medication—again, a product category that does not exist.

72.     Yet another patient saw an ad from G-Plans for "prescription Ozempic with a nutritional consult and monitoring for 6 months." *Id.* The patient considered this "an amazing deal" for the price and entered payment information, but upon check-out the patient was faced with additional charges that the patient was not able to cancel. *Id.*

73.     Patients echo similar complaints against Futurhealth on the Better Business Bureau, with many reporting fraudulent charges and undelivered drugs.[16]

74.     It is thus apparent that Defendants are using the Ozempic® and Wegovy® marks to capture the attention of patients in search of Novo Nordisk's FDA-approved medicines and induce them to pay various subscription fees before ultimately promoting the purchase of an altogether different product, Defendants' Unapproved Compounded Drugs, with false and misleading representations.

75.     On information and belief, Defendants have engaged in these unlawful practices to attract customers and generate revenues and profits.

76.     On information and belief, unless enjoined by this Court, Defendants will continue to falsely advertise their products and lure in patients with the Ozempic® and Wegovy® marks, all in violation of Plaintiffs' rights and harming Plaintiffs' reputation.

---

[16] Complaints Futurhealth, Better Business Bureau, https://www.bbb.org/us/ca/san-diego/profile/weight-loss/futurhealth-1126-1000125301/complaints (last visited July 23, 2024).

**FIRST CAUSE OF ACTION**

**Trademark Infringement in Violation of 15 U.S.C. § 1114(1)**

77.   Plaintiff NNAS realleges and incorporates by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

78.   Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

79.   Plaintiff NNAS's right to use its Ozempic® registration constitutes *prima facie* evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

80.   Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registrations.

81.   By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendants with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

82.   Defendants use the Ozempic® and Wegovy® marks extensively and without proper justification in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

83.   Defendants' use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

84.   The above-described acts of Defendants constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

85.   Defendants have unfairly profited from their trademark infringement.

86.     By reason of Defendants' acts of trademark infringement, Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

87.     Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

88.     Defendants' acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

89.     By reason of Defendants' acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiff NNAS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

90.     By reason of Defendants' willful acts of trademark infringement, the Court should award disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to NNAS.

91.     This is an exceptional case, making Plaintiff NNAS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**Trademark Infringement, False Designation of Origin, and Unfair Competition in Violation of 15 U.S.C. § 1125(a)(1)(A)**

92.     Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

93.     Defendants use the Ozempic® and Wegovy® marks in commerce in connection with Defendants' goods and services and in commercial advertising and promotion of its goods and services.

94.     Defendants use the Ozempic® and Wegovy® marks in commerce in a manner that is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that Defendants' goods or services are authorized, sponsored,

approved by, or otherwise affiliated with Plaintiffs, with Plaintiffs' genuine Ozempic® and Wegovy® medicines, and/or with the Ozempic® and Wegovy® marks.

95.    The above-described acts of Defendants constitute infringement of the Ozempic® and Wegovy® marks and use of false designations of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling Plaintiffs to relief.

96.    Defendants have unfairly profited from the actions alleged.

97.    By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

98.    The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs, the Ozempic® and Wegovy® trademarks, and the valuable goodwill associated with the trademarks.

99.    The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

100.    By reason of Defendants' acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

101.    Because the above-described acts of Defendants are willful, the Court should award disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to Plaintiffs.

102.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

**False and Misleading Advertising and Promotion**

**in Violation of 15 U.S.C. § 1125(a)(1)(B)**

103.    Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

104.   Defendants' practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

105.   Defendants have violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in their commercial advertising or promotion that misrepresent the nature, characteristics, and/or qualities of Defendants' business practices and products, as set forth above.

106.   Defendants have also engaged in other false or misleading advertising and promotion intended to assure patients that Defendants' practices are lawful. On information and belief, Defendants provide patients who purchase Defendants' Unapproved Compounded Drugs (or whom Defendants are trying to persuade to purchase their drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto:

107.   The above-described acts of Defendants, if not enjoined by this Court, are likely to deceive members of the general public.

108.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

109.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

110.   By reason of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation. However, Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendants to cease their false and misleading advertising and promotion and unfair competitive practices.

111.   Because the above-described acts of Defendants are willful, the Court should award disgorgement of Defendants' profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to Plaintiffs.

112.   This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

113.   Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

114.   The above-described acts of Defendants constitute common law unfair competition.

115.   The above-described acts of Defendants unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

116.   By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

117.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

118.   The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

119.   By reason of Defendants' acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendants' profits and corrective advertising costs to Plaintiffs.

**FIFTH CAUSE OF ACTION**

**False Advertising in Violation of California False Advertising Law**

**Cal. Bus. & Prof. Code § 17500 et seq.**

120.   Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

121.   California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq., prohibits false and misleading statements in connection with the sale of goods.

122.   Defendants violated this act by disseminating false and misleading statements about their Unapproved Compounded Drugs.

123.   Defendants knew or should have known these statements were false and misleading.

124.   Plaintiffs have suffered injury as a result of these violations because Defendants' false and misleading advertising has diverted business from Plaintiffs, causing lost sales and profits, and has damaged its goodwill with former, existing, and potential customers.

125.   The Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendants' profits attributable to Defendants' statements to Plaintiffs.

**SIXTH CAUSE OF ACTION**

**Unfair Competition in Violation of California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200, *et seq*.**

126.   Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1–73 of this Complaint as though fully set forth here.

127.   The UCL prohibits any "unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200, et seq.

128.   Defendants' conduct was unlawful under the UCL because it violates the following statutes:

129.    provisions 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a)(1)(A), and 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act; and

130.    California's False Advertising Law.

131.    Defendants' conduct was "unfair" under the UCL because Defendants made false and misleading statements about their provision of Unapproved Compounded Drugs putatively containing semaglutide.

132.    Defendants' conduct was "fraudulent" under the UCL because Defendants made false and misleading statements about their provision of Unapproved Compounded Drugs purportedly containing semaglutide.

133.    Plaintiffs have suffered harm as a result of these violations because Defendants' false and misleading advertising has diverted business from Plaintiffs, causing lost sales and profits, and has damaged its goodwill with former, existing, and potential customers.

134.    The Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendants' profits attributable to Defendants' statements to Plaintiffs.

## REQUEST FOR RELIEF

**WHEREFORE, Plaintiffs request judgment against Defendants as follows:**

1.    That the Court enter a judgment against Defendants that Defendants have:

2.    Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks, in violation of 15 U.S.C. § 1114(1);

3.    Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

4.    Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

5.    Engaged in unfair competition under the common law and violated California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq., and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

6.     That each of the above acts was willful.

7.     That the Court preliminarily and permanently enjoin and restrain Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

8.     using the Ozempic® and Wegovy® marks in any manner, including but not limited to (i) use in any manner that is likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks in any way, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

9.     advertising, stating, or suggesting that any Unapproved Compounded Drugs, including but not limited to any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendants or the use of which or access to which is facilitated by, or with the involvement of, Defendants:

10.    are, or contain, genuine or authentic Novo Nordisk Ozempic® or Wegovy® medicines;

11.    are sponsored by or associated with Novo Nordisk;

12.    are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

13.    achieve or have been shown or proven to achieve certain therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

14.    achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines and/or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

15.    are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

16.     contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

17.     engaging in any unfair competition with Plaintiffs; and/or

18.     engaging in any deceptive acts or practices.

19.     That the Court require Defendants to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including but not limited to all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

20.     That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendants' profits for Defendants' trademark infringement, false advertising, and unfair competition and that this monetary relief be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117 and any applicable state laws.

21.     That the Court award disgorgement of Defendants' profits resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition to Plaintiffs.

22.     That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of Defendants' unlawful actions.

23.     That Plaintiffs be awarded punitive damages by reason of Defendants' willful unlawful actions.

24.     For pre-judgment and post-judgment interest on all damages.

25.     That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

26.     That the Court award Plaintiffs the costs of suit incurred herein.

27.     For such other or further relief as the Court may deem just and proper.

DATED: August 2, 2024                    Respectfully submitted,


                                         By:   */s/ Nathan E. Shafroth*

                                               Nathan E. Shafroth (SBN 232505)
                                               Zoe B. Kaiser (SBN 352368)
                                               COVINGTON & BURLING, LLP
                                               415 Mission Street, Suite 5400
                                               San Francisco, CA 94105
                                               Telephone: (415) 591-7053
                                               nshafroth@cov.com
                                               zkaiser@cov.com

                                               Robert N. Hunziker (*pro hac vice
                                               forthcoming*)
                                               COVINGTON & BURLING LLP
                                               One CityCenter
                                               850 10th Street, NW
                                               Washington, DC 20001
                                               (202) 662-6000
                                               rhunziker@cov.com


                                               *Attorneys for Plaintiffs*
                                               *NOVO NORDISK A/S and*
                                               *NOVO NORDISK INC.*