UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK, INC.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>GOGLIA NUTRITION, LLC D/B/A G-PLANS AND FUTURHEALTH, INC.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 24-cv-01385-LL-VET<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 15] |

　　　Before the Court is a Motion to Dismiss Plaintiffs' trademark and unfair competition claims filed by Defendants Goglia Nutrition, LLC d/b/a G-Plans and Futurhealth, Inc. (hereinafter "Defendants"). ECF No. 15. Plaintiffs, Novo Nordisk A/S and Novo Nordisk, Inc. (hereinafter "Plaintiffs"), filed an Opposition to the Motion (ECF No. 21) and Defendants filed a Reply (ECF No. 22). The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **DENIES** the Motion to Dismiss.

/ / /

/ / /

/ / /

## I. BACKGROUND

Plaintiffs are a healthcare company that develops medicines to treat chronic diseases like diabetes and obesity. ECF No. 1 ¶ 2. Plaintiffs are the only company in the United States with FDA-approved medicines containing semaglutide, the primary ingredient in Plaintiffs' trademarked medicines Ozempic, Wegovy, and Rybelsus. *Id.* at ¶ 4. Ozempic and Wegovy are the only "two injectable semaglutide products FDA-approved for the U.S. market." *Id.* Since 2017 for Ozempic, and 2021 for Wegovy, Plaintiffs have promoted, advertised and marketed these medicines using the Ozempic and Wegovy trademarks. *Id.* at ¶¶ 23, 27, 29. As a result of this long use, promotion, and advertising of Ozempic and Wegovy, Plaintiffs allege that these trademarks are "well-known, strong, and famous marks[.]" *Id.* at ¶ 32.

Plaintiffs allege they have "not authorized Defendants to use" their marks, have "not provided Defendants with Novo Nordisk's FDA-approved semaglutide medicines," and do "not sell the bulk semaglutide" in their medicines "to any compounding pharmacies from which Defendants may be sourcing" their non-FDA approved drugs. *Id.* at ¶ 33. Notwithstanding this, Plaintiffs allege that Defendants "market and sell to patients Unapproved Compounded Drugs that purport to contain semaglutide and that are not approved by the FDA." *Id.* at ¶ 34. Plaintiffs further allege that "[Defendants'] Unapproved Compounded Drugs sold by Defendants are made by compounding pharmacies, which deliver them either directly to patients or to Defendants for administration or dispensing to patients." *Id.* at ¶ 35. Plaintiffs also allege that Defendants "run sponsored ads online that heavily emphasize[] the Ozempic and Wegovy marks, such as offers for 'Easy fast Ozempic prescription – East fast Wegovy prescription' and 'Get Ozempic with no insurance.'" *Id.* at ¶ 44; *see also* Exhibit D attached to the Complaint. Plaintiffs further allege that in some of the advertising, "Defendants deceptively pose as an affiliate of Novo Nordisk, advertising under the name 'Ozempic Medi.'" *Id.* at ¶ 45; *see also* Exhibit D. Plaintiffs allege that "[w]hen patients follow these ads to the G-Plans or Futurhealth websites, they are met with full-size pictures of branded Ozempic pens and the promise

that they can 'Get access to Ozempic, Wegovy' or 'Get approved' by taking a '5-min quiz' with 'no insurance needed.'" *Id.* at ¶ 46; *see also* Exhibit E. Plaintiffs further allege that "rather than inform patients that they also sell Unapproved Compounded Drugs, Defendants repeatedly assure patients that they will be prescribed 'true GLP-1 medications (like Ozempic or Wegovy).'" *Id.* at ¶ 49; *see also* Exhibit E.

On August 2, 2024, Plaintiffs initiated this action against Defendants alleging: (1) Trademark Infringement in Violation of 15 U.S.C. § 1114(1); (2) Trademark Infringement, False Designation of Origin, and Unfair Competition in Violation of 15 U.S.C. § 1125(a)(1)(A); (3) False and Misleading Advertising and Promotion in Violation of 15 U.S.C. § 1125(a)(1)(B); (4) Unfair Competition in Violation of the Common Law; (5) False Advertising in Violation of California False Advertisement Law Cal. Bus. & Prof. Code § 17500 et seq.; (6) Unfair Competition in Violation of California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, et seq. ECF No. 1.

Defendants brought a Motion to Dismiss the trademark and unfair competition claims (First, Second, Fourth, and Sixth Causes of Action) against them. *See* ECF No. 15 (hereinafter "Motion to Dismiss" or "Motion"). Defendants' Motion states two reasons in support of dismissing Plaintiffs' trademark and unfair competition claims. First, Defendants argue that the Complaint fails to comply with Federal Rule of Civil Procedure Rule 8 because it includes "generalized allegations lumping Defendants – who are two separate entities [] – into one 'group' throughout the pleading, making it impossible to determine the actual grounds upon which Plaintiffs' claims rest as to each individual Defendant." Motion at 6–7. Second, Defendants argue that their use of Plaintiffs' marks "fall[s] squarely within the nominative fair use doctrine." *Id.* at 9. In support thereof, Defendants argue that they are "concierge medical access platforms, providing access to physician-guided nutritional plans, prepared meals, medical services, and weight-loss medications, including Wegovy, Ozempic, and other unbranded semaglutide medications." *Id.* at 6. Defendants acknowledge that Plaintiffs own the trademarks for Wegovy and Ozempic, but claim that Plaintiffs are "seek[ing] to use its trademark rights to make it more

difficult for customers to access Plaintiffs' popular weight loss medications through Defendants' services." *Id.* at 6. Defendants argue that "the Lanham Act cannot be used to prevent nominative fair use – that is, use of another's mark to identify or refer to the mark holder's goods." *Id.* Defendants argue that they "only used as much of the Novo Nordisk Marks as necessary to describe Plaintiffs' medications and such use did not create any implications of sponsorship or endorsement from Plaintiffs." *Id.* Plaintiffs oppose on both grounds. *See* ECF No. 21 (hereinafter "Opposition" or "Oppo."). This Court considers each in turn.

## II. LEGAL STANDARD

Defendants bring this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Although "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," courts are not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Rule 12(b)(6) must also be read in conjunction with Rule 8, which requires a "short and plain statement showing that the pleader is entitled to relief" and "contains a powerful presumption against rejecting pleadings for failure to state a claim." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003) (internal citations omitted).

/ / /

/ / /

## III. DISCUSSION

### A. Rule 8

Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). To satisfy this rule, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. If that is not met, Rule 8(a) may be grounds for dismissal independent of Rule 12(b)(6). *Resh, Inc. v. Conrad*, No. 22-cv-01427, 2024 WL 924486, at *2 (N.D. Cal. March 4, 2024). Rule 8 dismissal is proper where "one cannot determine from the complaint who is being sued, for what relief, and on what theory." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

Group pleading is not "fatal so long as the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Sankey*, No. 14-1285-DOC, 2015 WL 12683801, at *3 (C.D. Cal. 2015); *see also Howard v. Mun. Credit Union*, No. 05-cv-7488, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be 'sufficient to put each [d]efendant on notice of what they allegedly did or did not do.'" (citation omitted)); *Corazon v. Aurora Loan Services, LLC*, No. 11-00542 DC, 2011 WL 1740099, at *3–4 (N.D. Cal. 2011) (finding a Rule 8 violation where Plaintiff named 50 Does and a loan service company as defendants, but "none of [Plaintiff's] allegations distinguishe[d] among the defendants" and many allegations pertained not to loan service).

Defendants argue that Plaintiffs' "collective group allegations" do "not meet the *Iqbal-Twombly* standard because they do not provide fair notice as to the grounds upon which Plaintiffs' claims rest as against each individual Defendant." Motion at 11. The crux of Defendants' argument is that the Complaint violates Rule 8 because it makes group allegations against both named Defendants Goglia Nutrition, LLC d/b/a G-Plans and Futurhealth, Inc., referring to them "as simply 'Defendants,' without any attempt at identifying the relationship between them." *Id.* at 12. Defendants also argue that none of

the alleged activities conducted by "'Defendants' can be imputed onto any one Defendant." *Id.* This, Defendants argue, constitutes improper group allegations, and renders the pleading defective. *Id.* at 11.

Plaintiffs oppose on the grounds that "Novo Nordisk need not attribute behavior by one defendant to another – rather, Novo Nordisk alleges that G-Plans and FuturHealth are each fully liable for each type of the infringing behavior alleged." Oppo. at 11. Plaintiffs allege Defendants "operate together, including through use of shared officers, employees, and marketing and provider resources." ECF No. 1 ¶ 13.[1] The Chief Executive Officer of both Defendants is Luke Mahoney. *Id.* ¶¶ 11, 12.

It is undisputed that there are instances in the Complaint where Plaintiffs refer collectively to the two Defendants – G-Plans and FuturHealth. *See* ECF No. 1. Collective references to defendants "often cause confusion when broad allegations are directed at a large and diverse group of defendants, obscuring which defendant is alleged to have committed which act." *Tivoli*, 2015 WL at *4. However, "group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Id.* (internal citation omitted). In *Tivoli*, even though plaintiff frequently referred collectively to the four defendants, the court found that the complaint did not lack sufficient detail to put each party on notice. *Id.* The *Tivoli* court reasoned that "the group [wa]s much narrower, closely related, and in the same general line of business." *Id.* Courts in this circuit recognize that "so long as group pleading is limited to defendants who are similarly situated," a failure to differentiate among defendants does not "necessarily render[] the complaint defective on its face." *In re Am. Apparel, Inc. S'holder Derivative Litig.*, CV 10-06576 MMM (RCx), 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012).

Here, the Court agrees with Plaintiffs that the Complaint does not deprive Defendants of fair notice of Novo Nordisk's claims. The Complaint can fairly be read to

---

[1] Defendants maintain they are separate entities and the "finances, employees, and operations of each Defendant are distinct, other than two common investors and a common CEO." Motion at 7.

find that Plaintiffs met their burden to show that each Defendant participated in the specific wrongful conduct alleged. Defendants are in the same line of business, similarly situated, and closely related under the same CEO. Accordingly, the Court agrees with Plaintiffs that this is not a case where it is unclear which defendants are engaged in which parts of a greater unlawful scheme. Here, Novo Nordisk has sufficiently alleged that each defendant is engaged in each category of unlawful conduct. For example, Plaintiffs provide numerous examples of the alleged unlawful conduct of both Defendants with instances where G-Plans and Futurhealth used identical marketing and website text. *See* Exs. D, E.

Defendants' reliance on the various cases cited in the Motion are not applicable to the facts in this case. For example, Defendants rely on *Polsky v. Ramnani*, to support dismissal of the trademark and unfair competition claims. 2018 WL 6133406, at *4 (C.D. Cal. Mar. 26, 2018). In *Polsky*, the court could not sift through which allegations matched each defendant because the plaintiff pled "one breach of fiduciary duty" against "four distinct people covering three distinct categories of misconduct" and alleged "all Defendants [we]re responsible for all misconduct under two different types of fiduciary duties." *Id.* The complexity of the claims and parties in *Polsky* is well beyond the scope of the instant case. Similarly, Defendants' reliance on *E-Vision Optics, LLC v. Luxottica Grp. S.p.A.* is also misplaced. 2024 WL 1601853, at *5 (C.D. Cal. Mar. 8, 2024). In *E-Vision Optics*, the court found that the plaintiffs violated Rule 8 because the court could not discern which infringing act was committed by the only remaining defendant over whom the court had personal jurisdiction. *Id.* Here, by contrast, Plaintiffs allege nearly identical infringing conduct by each Defendant, thereby putting each Defendant on notice of the allegations against them. Accordingly, the Court denies Defendants' Motion to Dismiss pursuant to Rule 8.

### B. Nominative Fair Use

Defendants' second argument for dismissal of Plaintiffs' trademark and unfair competition claims is that Plaintiffs' Lanham Act claims are barred by the nominative fair use doctrine. *See* Motion. Nominative fair use is the "use of another's trademark to identify

the trademark owner's goods or services." 3 Thomas McCarthy, Trademarks and Unfair Competition § 23.11 (5th ed. 2025). It "is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product*." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original). The Ninth Circuit has found that "nominative use of a mark – where the only word reasonably available to describe a particular thing is pressed into service – lies outside the structures of trademark law" because it does not "implicate the source-identification process that is the purpose of trademark." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). The court in *New Kids* held that:

> [a] commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* (footnote omitted). If the nominative use of a mark satisfies these three factors, then there is no infringement; "[i]f the nominative use does not satisfy all of the *New Kids* factors, the district court may order defendants to modify their use of the mark so that all three factors are satisfied." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010).

Here, Defendants contend that "each of the *New Kids* factors militates against a finding of infringement as a matter of law." Motion at 15 (internal citation omitted). Defendants further contend that "Plaintiffs' state law claims for unfair competition fall with the federal law claims." *Id.* (internal citations omitted). The Court will address each factor in turn.

### (1) Whether Plaintiffs' Product is Readily Identifiable Without Use of the Novo Nordisk Mark

Defendants contend that "it is not reasonably possible to refer to Plaintiffs' medication offered via Defendants' platforms as something other than Wegovy and

1  Ozempic where Defendants actually facilitate the prescription and sale of Wegovy and
2  Ozempic." Motion at 16. Defendants further contend that the facts of the instant case are
3  "no different" than those presented in *New Kids*. *Id.* Specifically, Defendants argue that "it
4  is not reasonably possible to refer to Plaintiffs' medication offered via Defendants'
5  platforms as something other than Wegovy and Ozempic where Defendants actually
6  facilitate the prescription and sale of Wegovy and Ozempic." *Id.* Defendants further argue
7  that "while [they] could have used the term 'branded semaglutide drugs' or some other
8  generic description, it was 'far simpler' to call Ozempic and Wegovy by their names" and
9  that "given the medical nature of the goods in question, it is crucial to be simple and
10 precise." *Id.*

11    Plaintiffs argue that the "pleaded facts establish that the nominative fair use doctrine
12 does not apply to defendants' confusing and misleading use of the marks." Oppo. at 13.
13 Specifically, Plaintiffs argue that "the nominative fair use defense is available only if 'the
14 use of the trademark does not attempt to capitalize on consumer confusion or to appropriate
15 the cachet of one product for a different one.'" *Id.* (internal citation omitted). Plaintiffs
16 argue that here, Defendants make extensive use of the Novo Nordisk marks for the purpose
17 of selling subscriptions to diet plans that do not include the Ozempic and Wegovy
18 medicines" and then "only after consumers purchase Defendants' diet plans do they even
19 have the option to pursue genuine Novo Nordisk medicines." *Id.* (citing Complaint at ¶ 50).
20 Accordingly, Plaintiffs argue that "it is not even possible to obtain the Ozempic or Wegovy
21 medicines via Defendants without first purchasing this unaffiliated weight loss plan (and
22 being induced to buy unapproved compounded drugs in lieu of genuine Novo Nordisk
23 medicines)." *Id.*

24    In order to satisfy the first factor, the Plaintiffs' product "must be one not readily
25 identifiable without use of the trademark." *New Kids*, 971 F.2d at 308. As the *New Kids*
26 court explained, "one might refer to 'the two-time world champions' or 'the professional
27 basketball team from Chicago,' but it's far simpler (and more likely to be understood) to
28 refer to the Chicago Bulls." *Id.* at 306; *see also Playboy Enters., Inc. v. Welles*, 279 F.3d

796, 802 (9th Cir. 2002) (holding no descriptive substitute exists for Playboy's trademarks, and finding nominative fair use for Welles to identify herself as a "Playboy Playmate of the Year 1981" rather than "a nude model selected by Mr. Hefner's magazine" in 1981). The Ninth Circuit alternatively describes this factor's inquiry as whether a defendant's use of the mark "'was necessary' to describe their business." *Tabari*, 610 F.3d at 1180. In *Tabari*, the court found that "[i]t's enough to satisfy our test for necessity that the Tabaris needed to communicate that they specialize in [brokering] Lexus vehicles, and using the Lexus mark in their domain names accomplished this goal." *Id.*

The Court finds that Defendants meet this first factor under either test. First, since Defendants are selling Plaintiffs' medicines, the products would not be readily identifiable without the use of Plaintiffs' trademarks. Second, it is necessary for Defendants to use Plaintiffs' mark for Defendants' business that allegedly sells, among other products, Plaintiffs' trademarked medicines. *See* Motion; *see also Tabari*, 610 F.3d at 1181 ("[t]he fact that the Tabaris also broker other types of cars does not render their use of the Lexus mark unnecessary" and defendants are "entitled to decide" which "brands to emphasize in their business."). The Court finds the first nominative fair use factor is met.

### (2) Whether Defendants' Use of the Mark is More than Reasonably Necessary to Identify Plaintiff's Product

The second nominative fair use factor is met if the defendant uses no more of the mark than "reasonably necessary to identify the product." *New Kids*, 971 F.2d at 308. What is reasonably necessary to identify plaintiff's product "differs from case to case," *Cairns*, 292 F.3d at 1154. Specifically, where "the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does not depend on the description of the plaintiff's product." *Id.* (emphasis in original).

Defendants argue that they "only used as much of the Plaintiffs' trademarks as necessary to identify Plaintiffs' medications because they use only the standard letter form

1  of the terms OZEMPIC and WEGOVY." Motion at 18. Defendants point to Exhibit E
2  attached to the Complaint to support their argument that "the fact that the terms Ozempic
3  and Wegovy appear multiple times throughout these webpages do[es] not mean that
4  Defendants used more than what was necessary to identify the relevant medications; rather,
5  the fact that the term Wegovy never appears in the distinct stylized form with colored text
6  as shown in Exhibit B to the Complaint, the term Ozempic is not shown in [] any distinctive
7  lettering or color, and the terms Ozempic and Wegovy are set in line with other text [],
8  demonstrate that Defendants only used as much as necessary to actually refer to Plaintiffs'
9  medications." *Id.* Defendants further argue that they are "free to advertise that they do in
10 fact offer Wegovy and Ozempic, and just as customers may be attracted to an auto broker's
11 buyalexus.com webpage because they want to buy a Lexus but may nonetheless leave with
12 a different car sold by the broker, customers may visit Defendants' webpages in the hopes
13 of obtaining Ozempic or Wegovy, but leave with some other medications (as prescribed by
14 doctors and elected by the patient)." *Id.* at 18-19.

15   Plaintiffs oppose and argue that Defendants use the marks to sell "subscriptions to
16 diet plans which do not include the Ozempic or Wegovy medicines," yet "the first thing
17 consumers see when they access Defendants' website is an exact full-size replica of Novo
18 Nordisk's distinctive Ozempic pen." Oppo. at 16. Plaintiffs argue that Defendants are
19 "analogous to brokers using the Lexus name to attract customers interested in buying Lexus
20 cars in order to sell a 'Luxury Car' subscription plan which does not include a Lexus car –
21 after which, and with the customer's subscription fee already in their pockets, they urge
22 the customer to buy a non-Lexus car, falsely assuring the customer that this car meets or
23 even exceeds a Lexus in every benchmark." *Id.* at 17-18.

24   Ninth Circuit "case law demonstrates that analysis of this factor should focus not on
25 the number of uses of Plaintiff's marks, but on whether Defendants used more of each
26 individual mark than was necessary in terms of font and stylization." *Applied*
27 *Underwriters, Inc. v. Lichentenegger*, 913 F.3d 884, 897 (9th Cir. 2019); *see also Welles*,
28 279 F.3d at 802 (finding factor satisfied because defendants used "trademarked words, not

the font or symbols associated with the trademarks"); *New Kids*, 971 F.2d at 308 n.7 ("a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering"); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 351 (9th Cir. 1969) (holding no infringement because defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *Tabari*, 610 F.3d at 1181 ("[U]se of the stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota" because "visual cues might lead some consumers to believe" they are dealing with an "authorized" "affiliate.").

Defendants admit they use "Ozempic" and "Wegovy" in regular type-face in their advertisements (ECF No. 1, Exhibit D), and that "G-Plans' and Futurhealth's websites used images of Plaintiff's product – namely an injectable pen – bearing the Ozempic mark." Motion at 18. However, Defendants argue using a "photo of the Plaintiffs' product is not unreasonable" to market and sell Plaintiffs' product "which is a specific, namely injectable, form of medication." *Id.* In making this argument, Defendants rely on *Cairns* and *Mattel, Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 811 (9th Cir. 2003).

In *Cairns*, defendant celebrity memorabilia company used the name and image of Princess Diana to identify and advertise their Princess Diana doll. 292 F.3d at 1154. The court found that the second *New Kids* factor was met: using her name and image was "reasonably necessary" to "identify" Princess Diana and her "royal tiara and bolero jacket" accessories. *Id*. Customers could "not be expected to recognize" her features or accessories on a doll without referential information. *Id.* The Court found that where identification "of the defendant's product depends on the description [or identification] of the plaintiff's product, more use of the plaintiff's trademark" is reasonably necessary. *Id.* Similarly, in *Walking Mtn.*, the court found this factor met when the defendant needed to use "the Barbie torso and head" to "represent and describe his photographic parodies of Barbie." 353 F.3d at 811.

The Court finds that Defendants' use of the branded injectable pen with "Ozempic" in its distinctive font and lettering is different than those cases. Here, unlike in *Cairns,* where defendants needed Princess Diana's likeness to communicate the doll *was* Princess Diana, Defendants do not need a branded Ozempic injectable pen to communicate they broker Plaintiffs' medications. Here, the Court finds it was unnecessary for Defendants to use symbols associated with the trademarks. Using the Ozempic name is sufficient to communicate their business. *See, e.g., Tabari*, 610 F.3d at 1181 ("[Defendants] could adequately communicate their message without using the visual trappings of the [Plaintiff's] brand."); *see also Applied Underwriters*, 913 F.3d at 895 (finding second factor satisfied when "[d]efendants used only the words themselves" and not "the illustration of a St. Bernard or the stylized lettering of Plaintiff's marks.").

In sum, at this procedural posture, Plaintiffs have sufficiently alleged that Defendants used more of Plaintiffs' marks than was necessary. Accordingly, Defendants have not satisfied the second nominative fair use factor.

### (3) Whether Defendants Have Done Acts That Would Falsely Suggest Sponsorship or Endorsement by Plaintiffs

The third nominative fair use factor requires the user to do "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308. This factor is "viewed as asking whether, in addition to mere use of the mark, defendant has engaged in some additional conduct that affirmatively suggests sponsorship or endorsement by the plaintiff." 4 McCarthy § 23.11 The question hinges on whether Defendants' use "expressly or by fair implication connotes endorsement or joint sponsorship." *New Kids*, 971 F.2d at 309. This factor "does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff." *Walking Mtn.*, 353 F.3d at 811.

Courts have held using marks in a manner that positively promotes the plaintiff's products may create an inference of sponsorship or endorsement. *James v. Am. Pac. Univ.*, Civ. No. 05-00746 JMS-BMK, 2006 WL 8436132, at *5 (D. Haw. Mar. 3, 2006) (finding

defendant's use of plaintiff's mark in advertising materials to promote upcoming seminars and training sessions created a potential likelihood of implied sponsorship or endorsement). Conversely, using the mark to critique plaintiff's products strongly suggests no sponsorship or endorsement. *See Applied Underwriters*, 913 F.3d at 896-97 (holding a reasonable customer would not assume sponsorship or endorsement where an advertisement referred to plaintiff's product as "sophisticated yet controversial" and offered strategies to help customers opt out of plaintiff's programs).

Defendants argue that they "have made no affirmative suggestions of sponsorship or endorsement by Plaintiffs, and the Complaint contains no factual allegations stating as such." Motion at 21. Defendants further argue that "[c]ourts have dismissed actions applying *New Kids* where the third factor was met because the Plaintiff did not allege any facts, other than conclusory allegations, cornering confusion as to sponsorship." *Id.* (internal citations omitted).

Plaintiffs oppose and argue that "consumers view the G-Plans and Futurhealth websites" and are "immediately faced with Ozempic® pens that physically overlap a phone screen showing the G-Plans or Futurhealth app." Oppo. at 18; ECF No. 1 ¶ 46, Ex. E. The "associated text reads, 'Woo! You're approved for our prescription plan.'" Oppo. at 19. Plaintiffs argue that this "text, paired with the Ozempic pen and app screen, suggests that the plan is sponsored by, endorsed by, or co-branded with Novo Nordisk." *Id.*

The Court finds that Plaintiffs have met their burden at the motion to dismiss stage to plead sufficient facts that a consumer may reasonably infer sponsorship or endorsement from Defendants' use of the Wegovy and/or Ozempic marks. In their Complaint, Plaintiffs allege that their marks are depicted in Defendants' advertisements and websites with claims that positively promote Plaintiffs' products including:

- [P]eople on Ozempic or Wegovy lose 15% of their weight in a year;

- [P]atients can 'lose 40 pounds in a month with Ozempic for just $2.99 a day;

- G-Plans only prescribe[s] true GLP-1 medications (like Ozempic or Wegovy);

- The medications that our doctors prescribe (Ozempic, Wegovy) are recommended by Harvard, Mayo Clini[sic], WebMD & the National Institutes of Health.

Complaint ¶ 44; *see also* Exs. D, E. These specific factual allegations support Plaintiffs' allegation that Defendants' use of Plaintiffs' trademarks is "likely to cause confusion, or to cause mistake, or to deceive" the "public into believing that Defendants' goods or services are authorized, sponsored, approved by, or other affiliated with Plaintiffs." Complaint ¶ 94. Plaintiffs also submit exhibits with the Complaint that create a factual basis for this allegation. *See* Exs. D, E.

Even though a fact-finder may ultimately interpret Defendants' advertisements and websites as merely descriptions of their businesses' offerings, it is also plausible that the fact-finder could conclude that these descriptions imply that Defendants have the approval, endorsement, or sponsorship of Plaintiffs in selling Plaintiffs' products. The G-Plans and Futurhealth websites' references to Wegovy and Ozempic create a positive and promotional association with Plaintiffs. At the motion to dismiss stage, the court must view the evidence in a light most favorable to Plaintiffs, and therefore must assume that the websites infer approval (i.e. sponsorship or endorsement).

In sum, Plaintiffs' factual assertions and inferences amount to more than mere conclusory allegations as to whether a reasonable consumer might infer sponsorship or endorsement. Plaintiffs, therefore, have met their burden to plead sufficient facts to rebut the applicability of the nominative fair use test. The Court concludes that Defendants are also unable to satisfy the third element of the nominative fair use defense. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' First and Second causes of action for trademark infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A).

/ / /

/ / /

### C. California and Common Law Unfair Competition Claims

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). As such, if claims relying on the exact same factual conduct survive dismissal under the Lanham Act, they survive under California Competition Law. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 300 F.Supp.3d 1073, 1091 (S.D. Cal. 2017). For the reasons discussed above, the Court concludes Defendants are unable to prove nominative fair use under the Lanham Act. Accordingly, Plaintiffs' Fourth and Sixth causes of action for common law and state unfair competition also survive dismissal. *See* ECF No. 1 ¶¶ 113–19 (alleging unfair competition in violation of the common law with all supporting allegations regarding trademark rights); ECF No. 1 ¶¶ 126–134 (alleging unfair competition under California Business and Professions Code § 17200 with all supporting allegations regarding trademark rights).

### IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' claims of trademark infringement and unfair competition.

**IT IS SO ORDERED.**

Dated: September 8, 2025

Honorable Linda Lopez
United States District Judge